IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>MICHAEL AARON GONZALIS,<br><br>*Defendant.* | Case No. CR-23-0277-JFH<br>Case No. CR-23-0366-JFH |

## MEMORANDUM ORDER AND OPINION

Defendant Michael Aaron Gonzalis pleaded guilty to Count One of the Indictment in Case No. 4:23-cr-277, and Count One of the Indictment in Case No. 4:23-cr-366—both of which charged him with being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(8). (4:23-cr-277 Docket No. 33; 4:23-cr-366 Docket No. 25.) The Court scheduled a sentencing hearing before the undersigned for October 22, 2024. (4:23-cr-277 Docket No. 33; 4:23-cr-366 Docket No. 26.) In anticipation of the sentencing hearing, the U.S. Probation Office ("Probation") drafted a Presentence Investigation Report ("PSR").[1] Mathis objected to paragraphs 8, 20, and 71 of the PSR. (4:23-cr-277 Docket No. 36; 4:23-cr-366 Docket No. 36.)

At the October 22, 2024 sentencing hearing, Agent Eric Booker, an agent with the Bureau of Alcohol, Tobacco, and Firearms, testified. After hearing Agent Booker's testimony and considering the arguments from both sides, the Court denied the objections to the PSR and sentenced Gonzalis to 110 months' imprisonment, within the advisory Guideline range. In so doing, it issued the following ruling from the bench, which has been edited for clarity and includes

---

[1] To be accurate, Probation drafted two PSRs: one in Case No. 4:23-cr-277, another in Case No. 4:23-cr-366. But the PSRs were duplicates, so the Court shall refer to "PSR" in the singular.

additional citations where necessary:

I have reviewed the objections previously, the responses, and the information in the PSR. Now, we have the testimony of ATF Agent Booker, which relies on information in a report that was already provided in discovery. After considering this new testimony, which I find is consistent with what appears in the record, I am going to deny the objections to paragraphs 8 and 20.

Let me, for the record, state my reasons. In order to address these objections, which I have overruled, I have considered the unobjected-to portions of the PSR, the 2023 edition of the U.S. Sentencing Guidelines, and decisions from the Tenth Circuit. The government bears the burden of proving, in the face of an objection to the PSR, by a preponderance of the evidence that there is sufficient evidence to warrant a sentencing enhancement under the Guidelines. See United States v. Conley, 89 F.4th 815, 821 (10th Cir. 2023).

As I mentioned, the objection to paragraph 71 concerns the offense-level computation and Guideline range, so it will be necessarily resolved by addressing the objections to paragraphs 8 and 20.

Now, the objection to paragraph 8 of the PSR is that the January 26, 2023 conduct is not relevant conduct pursuant to U.S.S.G. § 1B1.3. That Guideline provides that "specific offense characteristics" shall be determined, "with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, on the basis of all acts and omissions . . . that were part of the same course of conduct . . . as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

The relevant Guideline provision for the offense of conviction—18 U.S.C. §§ 922(g) and 924(a)(8)—is found at U.S.S.G. § 2K2.1. Therefore, to determine the specific offense characteristics, I look to that Guideline. Since § 2K2.1 is a groupable offense under § 3D1.2(d), "all acts and omissions" that were "part of the same course of conduct or common scheme or plan as the offense of conviction" constitute relevant conduct to determine the Guideline range. United

States v. Brown, 85 F.4th 1291, 1295 (10th Cir. 2023).

An offense is considered part of the "same course of conduct" based on several factors—for instance, "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). As the Tenth Circuit noted in United States v. Brown, 85 F.4th 1291, 1295 (10th Cir. 2023), "a stronger presence of two factors is required to compensate for one factor's absence." "For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).

In the case at bar, Gonzalis pleaded guilty in two separate cases to being a felon in possession of a firearm and ammunition. In the first case, occurring on March 30, 2023, Gonzalis possessed a stolen, chamber-loaded .380 caliber pistol. In the second case, occurring on April 12, 2023, Gonzalis possessed two stolen, chamber-loaded 9mm pistols. And we go to January 26, 2023, where the Court finds by a preponderance of the evidence that Gonzalis possessed a 9-millimeter pistol and ammunition.

I find that the government has proven, by a preponderance of the evidence, that these three incidents were similar, regular, and close enough in time to qualify as part of the "same course of conduct" and thus relevant conduct under § 1B1.3. U.S.S.G. § 1B1.3(a)(2).

First, for each offense, Gonzalis illegally possessed a firearm and ammunition. Tenth Circuit precedent holds that "in connection with a felon-in-possession crime, a defendant's additional instances of illegal firearm possession may be found to be not merely similar but identical, to the offense of conviction—without the need for a sentencing court to engage in a detailed analysis of the factual circumstances of each possession." United States v. Garcia, 946 F.3d 1191, 1204-05 (10th Cir. 2020). These instances are so identical here, considering Gonzalis

possessed firearms and ammunition as a felon on three occasions. I rely on the Tenth Circuit's finding of similarity in Brown, 85 F.4th at 1297, in which the Tenth Circuit focused on the defendant's status as a felon and that he also possessed firearms and ammunition on each occasion.

Second, Gonzalis's conduct happened on three occasions, which suggests a regular course of conduct. And, using the preponderance standard, I make this finding as well. Further, the first two occasions involved Gonzalis fleeing from arrest and the first and third occasion involved possessing a firearm in close proximity to drugs.

Third, the occasions occurred within a seventy-six-day time lapse, and only three months passed between the first and third instances of illegal possession. Contrary to Gonzalis's argument, this was not too great a temporal gap, and I find persuasive the Tenth Circuit's discussion in Garcia, 946 F.3d at 1208-10, as well as United States v. Windle, 74 F.3d 997, 1000 (10th Cir. 1996), where the Tenth Circuit found that the defendant's illegal possession of four-to-five firearms over a five-month period was considered close enough in time to qualify as relevant conduct.

Gonzalis's remaining arguments do not convince the Court. He argues that there is no showing of a "modus operandi" to qualify as relevant conduct. But that consideration is relevant only in determining whether two or more offenses constitute a common scheme or plan, per U.S.S.G § 1B1.3 cmt. n.5(B)(i). I, instead, rely on the adjoining comment, U.S.S.G. § 1B1.3 cmt. n.5(B)(ii), which applies to offenses "that do not qualify as part of a common scheme or plan."

I also note that Gonzalis cites United States v. Bowens from the Sixth Circuit, 938 F.3d 790 (6th Cir. 2019), which differs from the Tenth Circuit cases. However, we are in the Tenth Circuit, so I will follow the Tenth Circuit and not the Sixth Circuit. And I note that Garcia, in particular, does not seem to endorse the Sixth Circuit's approach. Compare Garcia, 996 F.3d at 1206 (collecting cases that hold that "allegedly relevant conduct can differ in meaningful respects from the conduct giving rise to a conviction without rendering the respective sets of conduct

4

'factually dissimilar' from one another"), and id. at 1204-05 (noting on plain-error review that Windle, 74 F.3d at 1000, "may be reasonably read as holding that, in connection with a felon-in-possession crime, a defendant's additional instances of illegal firearm possession may be found to be . . . identical to the offense of conviction" absent "a detailed [factual] analysis" (internal quotation marks and citation omitted)), with Bowens, 938 F.3d at 799 (requiring a showing "*beyond* the act of unlawfully possessing a gun," which only reflects "the general nature of the offense" (quoting United States v. Amerson, 886 F.3d 538, 578 (6th Cir. 2018))).

Now, this leads me to Gonzalis's objection to paragraph 20. He argues that the four-level enhancement pursuant to USSG § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony is unsupported by sufficient facts.

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines provides a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1, cmt. n.14(B)(ii). "Another felony offense" means "any federal, state, or local offense," not including the instant firearm possession offense, "punishable by imprisonment for a term exceeding one year, regardless of whether . . . a conviction [was] obtained." Id., cmt. n.14(C). The Government bears the burden of proving the enhancement—including the facts justifying the enhancement—by a preponderance of the evidence. Part of that burden entails proving either constructive or actual possession of the firearm. See United States v. Gambino-Zavala, 539 F.3d 1221, 1229 (10th Cir. 2008). For constructive possession, that means "the government merely must show the defendant had knowledge of and access to the contraband." Id. (citation omitted).

I have considered the evidence presented before me today, including the testimony from Agent Booker, which I find consistent with the evidence of record in the PSR, as well as what is

discussed in the Cherokee County's Sheriff's Office report of investigation for January 26, 2023. I find that the evidence of record establishes the following facts by a preponderance of the evidence.

On January 26, 2023, Cherokee County Sheriff's Office investigators discovered two firearms belonging to Gonzalis in a trailer that he inhabited with Crystal Osborn, his girlfriend. Inside the trailer, which was a single room dwelling, were 353.91 grams of methamphetamine and scales. Crystal Osborn made a statement that there were two firearms inside the trailer, and that one firearm belonged to her while the other belonged to Gonzalis. Again, under the preponderance standard, I make a finding that more likely than not, this firearm either belonged to Gonzalis or it was jointly possessed. Cf. Gambino-Zavala, 539 F.3d at 1230 (inferring possession of heroin for the enhancement based on the defendant's joint occupancy and access to all the areas of a small apartment).

I find that the Government has proven by a preponderance of the evidence that Gonzalis possessed these firearms "in connection with" possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1); U.S.S.G. § 2K2.1(b)(6)(B). The presence of scales and the large amount of methamphetamine demonstrates an intent to distribute, as noted in United States v. Triana, 477 F.3d 1189, 1195 (10th Cir. 2007), and United States v. Draine, 26 F.4th 1178, 1191 (10th Cir. 2022). By a preponderance of the evidence, I find that Gonzalis possessed the firearms because he had dominion and control over the trailer as a cohabitant with access to everything in the trailer. Cf. Gambino-Zavala, 539 F.3d at 1230; United States v. Little, 829 F.3d 1177, 1180, 1183 (10th Cir. 2016) (holding that for a felon-in-possession conviction "it would be unreasonable to conclude that Little did not know about the presence of" a firearm located inside a duffel bag that was either in or under a sleeping bag on the bed in the "cramped" house that Little rented). Because the guns that he possessed were found in close proximity to the scales and

methamphetamine—due, in part, to the small size of the trailer—there is the requisite nexus between the firearm possession and drug trafficking.  I note that I reach this conclusion by relying on United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1999), which upheld the enhancement for a handgun located in the defendant's residence near methamphetamine and drug paraphernalia, and United States v. Gambino-Zavala, 539 F.3d 1221, 1230 (10th Cir. 2008), which upheld the enhancement for a shotgun kept in apartment near containers holding heroin.

Accordingly, Gonzalis's objections are overruled.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Objections to the Presentence Investigation Report are **OVERRULED**.

DATED: November 1, 2024

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States Circuit Judge, Sitting by Designation